UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Harold Johnson,                                          Civil No. 04-2636 (JRT/FLN)

        Plaintiff,

        v.                                          **REPORT AND RECOMMENDATION**

City of Minneapolis, Jessie Garcia, III,
Steven Parshall, Patricia Nelson, and
Troy Walker,

        Defendants.

_____

Bruce Rivers, for Plaintiff.
C. Lynne Fundingsland, Assistant Minneapolis City Attorney, for Defendants.

_____

**THIS  MATTER** came before the undersigned United States Magistrate Judge on November 4, 2005, on Defendants' Motion for Partial Summary Judgment [Docket No. 19].  The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons that follow, this court recommends that defendants' motion for partial summary judgment be granted in part and denied in part.

**I.  FACTUAL BACKGROUND**

Plaintiff Harold Dale Johnson was arrested by Minneapolis police officers in September 2003. He was subsequently charged and acquitted of Second Degree Assault in Hennepin County District Court.  Plaintiff brings suit against the City of Minneapolis, and Minneapolis Police Officers Garcia, Parshall, Nelson, and Walker, alleging, *inter alia*, Fourth Amendment violations pursuant to 42 U.S.C. § 1983.  Defendants move for partial summary judgment.

On September 28, 2003, at approximately 8:45 p.m., Defendant Officers Garcia and Parshall responded to a citizen complaint of an assault with a BB gun in a residential neighborhood in North Minneapolis. Fundingsland Aff. at Ex. H (Garcia Depo.). Officer Parshall interviewed the alleged victim of the assault, who identified the individual who allegedly committed the assault as Plaintiff's son, Joe Johnson. Id. The victim and her mother told the Officers that Plaintiff and his son lived on Oliver Avenue in North Minneapolis.

Officers Garcia and Parshall proceeded to Plaintiff's residence. They parked their car in the alley behind Plaintiff's house, and approached the rear entrance. Id. at Exs. H, I (Parshall Depo.). They parked the squad car near a tree that partially obstructed it from the view of someone standing in the rear doorway of Plaintiff's home. Id. at Ex. H.

The officers walked through the backyard to the rear entrance of the residence. It is disputed whether the back porch light was on or off that evening. See e.g., Rivers Aff., Ex. 2 (Partial Criminal Trial Transcript) at Parshall p. 146 and Fossum p. 314. Officer Garcia walked up the back steps and opened the outer screen door and knocked on the steel interior door. Id. at Garcia p. 137. Hearing no response, Garcia knocked harder a second time. Neither Garcia nor Parshall announced or identified themselves as police officers. Rivers Aff., Ex. 2, at Garcia p. 37 and Parshall p. 151.

Plaintiff heard the knocks and, assuming it was one of Joe's friends, yelled for him to answer the door. Plaintiff and Joe testified that as he approached the back door, Joe was holding a black, cordless phone in his left hand. Fundingsland Aff., Ex. B (H. Johnson trail testimony); Rivers Aff., Ex. 4 (J. Johnson Depo.). Plaintiff recalls that Joe had a BB pistol, or replica firearm, in the left side of his waistband. Fundingsland Aff., Ex. B. Joe denies that he had the BB gun in his hand when he opened

the door.  Rivers Aff., Ex. 4.  As he proceeded to the door, Joe asked twice who was there, but he received no response.  Fundingsland Aff., Ex. B.  Joe opened the door and heard four gun shots. Rivers Aff., Ex. 4.  He looked down and saw that his hand was covered with blood and realized that he had been shot.

According to Officer Garcia, Joe opened the door quickly and thrust what he thought was a gun in his face.  Rivers Aff., Ex. 2 at Garcia pp. 39-40.  Garcia yelled, "gun" and pulled his handgun and fired at Joe in the doorway.  Officer Parshall testified that he saw Joe point what he thought was a silver hand gun at Garcia.  Rivers Aff., Ex. 2 at Parshall pp. 153-154.  After Garcia fired, Joe shut the door, and the Officers retreated to positions of cover in the backyard.  Rivers Aff., Ex. 2 at Garcia pp. 43-44.  They called for backup to the scene.  Fundingsland Aff., Ex. I.

After he shut the door, Joe approached Plaintiff and him he had been shot, but that he didn't know by whom.  Fundingsland Aff., Ex. B.  Plaintiff grabbed a rifle and went to the back door.  He saw and heard nothing in the yard.  Id.  He opened the door, and while holding the gun, yelled, "get the f--- out of here."  Id..  Plaintiff testified that he stood within the threshold and never left the house.  In a matter of seconds, Plaintiff felt the door vibrate and heard loud noises.  He dropped the gun and started running into the other room.  Id.  A bullet hit his leg and he felt something hit his back.  Rivers Aff., Ex. 2 at H. Johnson p. 341.  Plaintiff fell to the floor, and he asked Joe's mother, Lynell Fossum, with whom he lived, to call 911.  Id.  at H. Johnson p. 348.

According to Officers Garcia and Parshall, after Plaintiff appeared in the doorway with his weapon, they yelled, "Police!  Drop the gun."  Fundingsland Aff., Ex. H.  According to Plaintiff and his neighbors, the Officers did not identify themselves until after Johnson had been shot.  Fundingsland Aff.,

Ex. B.; Rivers Aff., Ex. 2 at H. Johnson p. 347.

Garcia testified that after Plaintiff opened the door, he walked into the middle of the yard and shouldered his rifle and aimed it at Officer Parshall.  Rivers Aff., Ex. 2 at Garcia pp. 56-57.  Both Officers admit they fired multiple rounds at Plaintiff.  Rivers Aff., Ex. 2 at Garcia p. 57; Parshall p. 183.

After Plaintiff had been shot and retreated, Defendant Officers Walker and Nelson arrived on the scene.  Fundingsland Aff., Ex. I.  When they arrived, Plaintiff, Joe and Fossum emerged from the back of the house in response to the officers' commands to exit the residence.  Fundingsland Aff., Exs. B, C.  According to Plaintiff, Officer Walker handcuffed him and pushed him to the ground.  Rivers Aff., Ex. 4.  Plaintiff alleges Walker slammed his ear with his boot and ground his glasses into his head while he was being handcuffed.

Plaintiff was subsequently charged with Second-Degree Assault.  His trial in Hennepin County District Court resulted in an acquittal.

Plaintiff alleges the following counts of action against all named Defendants: Count I, unreasonable seizure – arrest without probable cause; Count II, excessive force; Count IV, battery, Count V, assault; Count VI, false arrest; Count VII, malicious prosecution; and Count VIII, intentional infliction of emotional distress.

He alleges three counts specifically against the City of Minneapolis: Count III, failure to supervise officers with violent propensities; Count IX, vicarious liability; and Count X, negligent supervision.

Plaintiff alleges punitive damages (Count XI) against Defendants Garcia and Parshall.

Defendants move to dismiss all claims against Defendant Nelson, the federal claims against the

City, the unreasonable seizure claim, the excessive force claim against Defendant Walker, the state claims against the individual Defendants (battery, assault, false arrest, malicious prosecution, and intentional infliction of emotional distress), and the state claims against the City (vicarious liability and negligent training and supervision).

## II.  LEGAL ANALYSIS

### A.      Standard of Review

The Supreme Court has held that summary judgment is to be used as a tool to isolate and dispose of claims or defenses that are either factually unsupported or based on undisputed facts.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323-27 (1986).  Therefore, summary judgement is appropriate when the moving party establishes that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 322-23.  For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case; while a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgement, a court should construe all evidence in favor of the non-moving party.  Id. at 251.  Thus, summary judgment is appropriate when the court has "viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and . . . have found no triable issue."  Rosati v. Cleveland-Cliffs, Inc., 259 F. Supp.2d 861, 867 (D. Minn. 2003).

**B.      Claims Against Defendant Nelson**

Defendants move to dismiss all claims against Defendant Nelson because Plaintiff did not allege

that she was involved in his shooting or arrest, or that she engaged in assault, battery or excessive force.

At the motion hearing, Plaintiff voluntarily dismissed all claims against Defendant Nelson.  Accordingly,

those claims are no longer before the Court.

**C.      Unreasonable Seizure**

Plaintiff alleges a Fourth Amendment violation, claiming that Defendants lacked probable cause

to detain and arrest him.  To allege a claim for false arrest, a plaintiff must show that the arrest itself was

false.  Lundeen v. Renteria, 224 N.W.2d 132 (Minn. 1974).  The constitutionality of an arrest is

determined by whether it was made with or without probable cause.  If there is probable cause for the

arrest, then a plaintiff's section 1983 action is barred.  Sheets v. Butera,  389 F.3d 772, 777 (8th Cir.

2004); see also Lundeen, 224 N.W.2d at 135 (the test for unlawfulness of the arrest is the absence of

arguable probable cause).

A law enforcement officer has probable cause to arrest a suspect without a warrant if the "facts

and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one

of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is

committing, or is about to commit an offense."  Garionis v. Newton, 827 F.2d 306, 309 (8th Cir.

1987) (quoting Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)).

Defendants argue that probable cause existed for Plaintiff's arrest.  Plaintiff was charged by

criminal complaint with Assault in the Second Degree.  Keeler Aff. ¶ 4.  The complaint was reviewed

by a Hennepin County District Court Judge who signed the complaint.  The criminal charge against

Plaintiff proceeded to trial and a jury verdict.  Keeler Aff. ¶ 5.  Defendants argue that therefore, the false arrest claim against all Defendants should be dismissed.  See Def. Mem. at 12.    The Court agrees.  Plaintiff is collaterally estopped from raising the issue of whether his arrest was supported by probable cause because it was litigated during his state criminal proceedings.  See Crumley v. City of St. Paul, 324 F.3d 1003, 1006-07 (8th Cir. 2003).  In Allen v. McCurry, the Supreme Court held that collateral estoppel, or issue preclusion, may apply when section 1983 plaintiffs attempt to re-litigate in federal court issues decided against them in state criminal proceedings.  449 U.S. 90, 103 (1980). "[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." W.F.M., Inc. v. Cherry County, 279 F.3d 640, 643 (8th Cir. 2002) (citing Allen, 449 U.S. at 94).

Collateral estoppel applies under Minnesota law where: "(1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue." Willems v. Comm'r of Pub. Safety, 333 N.W.2d 619, 621 (Minn. 1983).  These conditions are met in the present case.  Plaintiff was prosecuted by complaint in state court.  The proceedings against him proceeded to trial and jury verdict.  The state court necessarily determined the exact issue of whether Plaintiff's arrest was supported by probable cause.  The state court's ruling prevents this Court from ruling contrarily in Plaintiff's section 1983 case. The fact that a jury ultimately acquitted Plaintiff of the offense is irrelevant to the discussion.  See Crumley, 324 F.3d at 1006 (plaintiff estopped from arguing issue of probable cause after state court acquittal); see also DeFillippo, 443 U.S. at 36 ("The validity of the arrest does not depend on whether

the suspect actually committed a crime; the mere fact that the subject is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest.").

Because the state court found probable cause for Plaintiff's arrest, Plaintiff is estopped from arguing his arrest was unlawful. His claim for "unreasonable seizure – arrest without probable cause" fails against all named Defendants, and should be dismissed.

### D.      Excessive Force

Defendant Walker moves to dismiss Plaintiff's excessive force claim against him.[1]  Walker argues that he is protected against the claim by qualified immunity.  "The purpose of qualified immunity is to allow public officers to carry out their duties as they believe are correct and consistent with good public policy, rather than acting out of fear for their own personal financial well being."  Sparr v. Ward, 306 F.3d 589, 593 (8th Cir. 2002).  The doctrine of qualified immunity protects government actors from civil liability when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (federal actors); Sexton v. Martin, 210 F.3d 905, 909 (8th Cir. 2000) (applying policy to state government actors).

The United States Supreme Court has instructed that in deciding the qualified immunity issue, a court must first ask whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  If the court determines that the plaintiff, based on the facts alleged, was deprived of his

---

[1]      Because of the factual dispute regarding Plaintiff's shooting, Defendants Garcia and Parshall do not move for summary judgment on this court.  See Def. Mem. at 19 n. 3.

constitutional right, then the court must inquire whether the right was clearly established.  Id.   For

summary judgment purposes, the court must ask if there are genuine issues of material facts as to

whether a reasonable officer would have known that his conduct was unlawful in the situation he

confronted.  See Foulks v. Cole County, 991 F.2d 454, 456 (8th Cir. 1993).

Here, Defendants contend that Plaintiff's claim fails because Plaintiff has failed to establish that

Walker violated a clearly established right.  See Def. Mem. at 22-25.  Plaintiff alleges he was subjected

to excessive force during his apprehension.

The Fourth Amendment "provides an explicit textual source of constitutional protection" against

seizure by excessive force. Graham v. Connor, 490 U.S. 386, 395 (1989).  Force is excessive in

violation of Fourth Amendment rights where it is "excessive under objective standards of

reasonableness."  Saucier, 533 U.S. at 202.  "The right to make an arrest or investigatory stop

necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."

Graham, 490 U.S. at 396.  "Not every push or shove, even if it may later seem unnecessary in the

peace of a judge's chambers, violates the Fourth Amendment."  See id. (citation omitted).  The Court

must evaluate the totality of the circumstances to determine whether the officer's actions were

objectively reasonable in light of the circumstances.  Greiner v. City of Champlin, 27 F.3d 1346, 1354

(8th Cir.1994).  "The calculus of reasonableness must embody allowance for the fact that police

officers are often forced to make split-second judgments - in circumstances that are tense, uncertain

and rapidly evolving - about the amount of force that is necessary in a particular situation."  Graham,

490 U.S. at 396-97.  Relevant considerations include the severity of the crime, whether the suspect

posed a threat to the safety of both the officers and others, and whether the suspect was resisting arrest.

Foster v. Metro. Airports Comm'n, 914 F.2d 1076, 1082 (8th Cir.1990).  In addition, courts may

consider the result of the force in analyzing an excessive force claim.  Crumley, 324 F.3d at 1007.

The precise conduct the Court must evaluate here is Officer Walker's apprehension of Plaintiff.

The Court concludes that Plaintiff has asserted a violation of a clearly established constitutional right,

and presented an issue of fact whether Officer Walker used excessive force when apprehending

Plaintiff.  Walker is, therefore, not entitled to qualified immunity against the excessive force claim.

In analyzing whether or not Plaintiff has asserted a constitutional right, the Court examines

whether Officer Walker's actions were objectively reasonable in light of the facts and circumstances

confronting him.  See Graham, 490 U.S. at 397.  An officer's personal motivations in using a particular

degree of force are irrelevant.  Id.

Plaintiff alleges that Officer Walker smashed and split his right ear with his boot, and that he

smashed his glasses into his face and his face into the ground.  Plaintiff contends that once the officers

identified themselves, he complied with their orders to exit his home and lay on the ground.  Plaintiff

further contends that, despite his alleged submission to arrest, Officer Walker smashed and split

Plaintiff's ear with his boot, and smashed his head into the ground.  Plaintiff alleges he sustained a

wound to his thigh, left shoulder blade, and a laceration to his ear.  See Fundingsland Aff. Exs. E, F, G.

Finally, Plaintiff contends that, at the moment that Officer Walker smashed Plaintiff's face into the

ground, he was unarmed, lying in the prone position with his hands behind his back, and suffering a

bullet wound to his leg.

The Court must view the facts in the light most favorable to Plaintiff.  A jury could reasonably

construe the facts as Plaintiff alleges to support a finding that Officer Walker used excessive force on

Plaintiff in violation of his Fourth Amendment rights, and that a reasonable officer would have understood that the level of force used violated that right.  See Parks v. Pomeroy, 387 F.3d 949, 955-56 (8th Cir. 2004).  See also Saucier, 533 U.S. at 202 (constitutional right clearly established if it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted); Anderson v. Creighton, 483 U.S. 635, 640 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.").

Accordingly, the court finds that a genuine issue of fact exists as to whether Officer Walker acted in violation of Plaintiff's constitutional rights, and qualified immunity is inappropriate.  See Kukla v. Hulm, 310 F.3d 1046, 1050 (8th Cir. 2002) (denying summary judgment on qualified immunity grounds where issue of fact whether force used was excessive).  Defendants' Motion for Summary Judgment on Plaintiff's excessive force claim against Officer Walker should be denied.

### E.      Failure to Train, Supervise and Discipline under Monell

Plaintiff alleges that the City should be liable under 42 U.S.C. section 1983 for the failure to train, supervise and discipline its police officers.  The Court disagrees.

A city cannot be held vicariously liable for the actions of its police officers under section 1983 on a theory of respondeat superior.  Monell v. Dept. of Social Servs., 436 U.S. 658, 694 (1978).  A city may be liable, however, for the unconstitutional acts of its officials or employees when those acts implement or execute an unconstitutional policy or custom of the city.  Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999).  That is, a section 1983 claim against a governmental entity will not stand unless action pursuant to official municipal policy caused a constitutional tort.  Monell, 436 U.S. at 694.  Therefore, for a municipality to be liable, a plaintiff must prove that an official policy

or custom was "the moving force [behind] the constitutional violation."  Id.; City of Canton v. Harris, 489 U.S. 378, 385 (1989) (only where the constitutional injury is caused by the execution of city policy or custom will section 1983 liability lie).

Here, Plaintiff argues that inadequate training of police officers represents a policy sufficient to support a Monell claim against the City.  See Pl. Opp. Mem. at 19.  "[T]he inadequacy of police training may serve as the basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom police come into contact.  City of Canton, 489 U.S. at 389.

Plaintiff argues that the City is liable for his injuries because: (1) the Defendant officers violated police protocol that required them to identify themselves as police officers when they knocked on Plaintiff's door to investigate the BB gun shooting; (2) the City has a history of implicitly condoning excessive force by its defendant officers; and (3) the City's widespread failure to investigate and discipline its officers for misconduct led the Defendants to conclude that the City's custom allowed them to violate Plaintiff's rights without fear of being punished.  See Pl. Mem. at 17-22.

The Court concludes that Plaintiff has failed to establish the City's liability for negligent training or supervision under section 1983.  "The inadequate training of police officers could be characterized as the cause of a constitutional tort only if - and only if - the failure to train amounted to 'deliberate indifference' to the rights of persons with whom the police come into contact."  Collins v. City of Harker Heights, 503 U.S. 115, 124 (1992); see also Patzner v. Burkett, 779 F.2d 1363, 1367 (8th Cir. 1985) (stating that a governmental entity may be liable for failure to prevent misconduct by employees if it had "notice of prior misbehavior by its officers and failed to take remedial steps

amounting to deliberate indifference to the offensive acts").

Plaintiff claims that the City's policy of deliberate indifference is evident from the allegations of misconduct against the Defendant officers to the Civilian Review Authority ("CRA") and the Minneapolis Police Department's Internal Affairs Unit ("IAU"), and numerous lawsuits involving the Defendant officers. Defendant Garcia, who has worked as a Minneapolis police officer since 1990, has been the subject of seven citizen complaints to the CRA that involved allegations of excessive force. Of these seven complaints, the CRA found no probable cause in four cases, two complaints were dismissed because of lack of cooperation from the complaining witness and one complaint was resolved through mediation. Defendant Garcia has never been the subject of an IAU investigation. He has been named as a defendant in three lawsuits including the instant litigation. One case is currently pending, and one has settled. See Def. Reply Mem. at 6, citing McManus Aff. ¶ 12.

Defendant Parshall, who has also worked as a Minneapolis officer since 1990, has been the subject of three citizen complaints to the CRA involving allegations of excessive force. In all three cases, the CRA found no probable cause to support the complaint. Defendant Parshall has never been the subject of an IAU investigation. He has been named as a defendant in two suits including the instant litigation. See Def. Reply Mem. at 7.

Defendant Walker, a police officer since 2002, has never been the subject of a citizen complaint to the CRA or an IAU investigation.

The Court finds that these prior complaints and lawsuits fail to establish that the City had knowledge of prior misbehavior and failed to act. The fact that Garcia and Parshall have been the subject of citizen complaints to the CRA of excessive force, and have been named in previous lawsuits,

is insufficient to establish that they have engaged in prior misconduct.  Only one complaint against

Garcia proceeded to mediation and the Court is unaware of the substance and relevance of the

previous lawsuits.  Plaintiff fails to establish that the City was aware of prior misbehavior on behalf of its

officers, much less that the City's inaction to any alleged misbehavior amounted to deliberate

indifference.  See Patzner, 779 F.2d at 1367.  Plaintiff's claim that the City is liable for the failure to

train or prevent the misconduct of its employees should be dismissed.

Moreover, Plaintiff fails to present any evidence that indicates the City employs an

unconstitutional practice, policy, or custom of failing to train and supervise employees.  Although

Plaintiff contends that the Defendants have not been disciplined for their actions against Plaintiff, the

assertion is not enough to create an issue of fact whether the City employed an unconstitutional practice

or procedure that caused Plaintiff's alleged injury.  See City of Oklahoma City v. Tuttle, 471 U.S. 808,

824 (1985).  Accordingly, Plaintiff's claim that the City should be liable under Monell should be

dismissed.

**F.      Plaintiff's State Claims Against the Individual Defendants**

The individual Defendants argue they are entitled to official immunity on Plaintiff's state law

claims of battery, assault, false arrest, malicious prosecution[2] and intentional infliction of emotional

distress.  A public official is entitled to official immunity from state law claims when that official is

charged by law with duties that require the exercise of judgment or discretion.  Elwood v. Rice County,

423 N.W.2d 671, 677 (Minn. 1988).  An exception to the immunity doctrine exists if the officer acted

maliciously or willfully.  Id.  To defeat a claim of official immunity, a plaintiff must prove the defendant

---

[2]        Plaintiff has voluntarily dismissed this cause of action.  See Pl. Opp. Mem. at 26.

knowingly violated clearly established law at the time he acted.  <u>Rico v. State</u>, 472 N.W.2d 100, 107

(Minn. 1991).  A plaintiff must present specific facts showing that the official knew that what he or she

was doing lacked legal justification.  <u>See</u> <u>Reuter v. City of New Hope</u>, 449 N.W.2d 745, 751 (Minn.

Ct. App. 1990).  The exception anticipates liability only when an official intentionally commits an act

that he or she has reason to believe is prohibited.  <u>Rico</u>, 472 N.W.2 at 107.  For the reasons that

follow, the Court finds that Defendants are not entitled to official immunity on any of Plaintiff's state law

claims.

> **1.      Battery**

Plaintiff alleges that the individual Defendants committed battery when they "shot, punched, and

otherwise beat Plaintiff."  Complaint ¶ 37.  A battery is an intentional unpermitted offensive contact with

another.  <u>Paradise v. City of Minneapolis</u>, 297 N.W.2d 152, 155 (Minn. 1980).  Because a police

officer may come in contact with an individual for certain purposes, the use of force by a police officer

must be excessive to constitute battery.  <u>Johnson v. Peterson</u>, 358 N.W.2d 484, 485 (Minn. Ct. App.

1984).

Defendant Walker moves to dismiss the claim of battery.[3]  He argues that because he acted

reasonably, he is entitled to official immunity for the force he used against Plaintiff.  Even assuming that

Walker was performing a discretionary duty within the scope of his official duties when he handcuffed

Plaintiff, the Court concludes a fact issue exists whether Walker acted with malice.  <u>See</u> <u>Kelly v. City of</u>

<u>Minneapolis</u>, 598 N.W.2d 657, 664 n. 5 (Minn. 1999) (noting that whether an officer acted maliciously

---

[3]      As with the excessive force claim, Defendants Garcia and Parshall do not move for
summary judgment on the battery claim.  <u>See</u> Def. Mem. at 28 n. 4.

is generally a question of fact for the jury).  As discussed above, assuming Plaintiff's version of the facts

to be true, Officer Walker kicked Plaintiff in the ear and smashed his head into the ground.  A jury

could conclude that Walker's use of force was unreasonable.  Walker's alleged conduct during the

apprehension of Plaintiff is sufficient to raise a genuine issue of fact on the issue of malice.  Accordingly,

Plaintiff's claim battery should go forward against Defendant Walker.  See Paradise, 297 N.W.2d at

155.  Defendants' motion to dismiss the battery claim against Defendant Walker should be denied.

        2.      **Assault**

        Plaintiff also alleges assault by the Defendants when they shot, beat, seized, detained, and

arrested Plaintiff.  Minnesota law defines an assault as an unlawful threat to do bodily harm to another,

made by one having the present ability to carry out the threat.  Johnson v. Morris, 453 N.W.2d 31, 41

(Minn. 1990).  The display of force that accompanies the threat must be such that it causes the plaintiff

"reasonable apprehension of immediate bodily harm."  Dahlin v. Fraser, 288 N.W. 851, 852 (Minn.

1939).  According to the Minnesota Supreme Court, "[t]he use of threatened force by a peace officer

is lawful if it is a reasonable use of force when used in affecting an arrest."  Johnson, 453 N.W.2d at 41

(citing Minn. Stat. § 609.06(1)(a) (1988)).  The court further explained that Minnesota Statues places

some limits as to what is "reasonable force" by providing that "a peace officer 'may not subject the

person arrested to any more restraint than is necessary for the arrest and detention.'"  Id. (citing Minn.

Stat. §  629.32 (1988)).  Viewing the facts in a light more favorable to the Plaintiff, the court concludes

that an issue of fact exist as to whether the Defendant Officers' actions were reasonable or necessary.

See id.  ("The employment of words such as "reasonable" and "necessary" in the statutes usually signals

the existence of issues for factual resolution-- ordinarily by a jury.")  Accordingly, the court finds that the

Plaintiff's claim of assault should continue.

### 3.    False Arrest

Plaintiff alleges that his arrest was illegal.  If probable cause to arrest exists, the subsequent arrest is lawful and there is no cause of action for false arrest or false imprisonment.  Lundeen v. Renteria, 224 N.W.2d 132, 135 (Minn. 1974).  As discussed above, the state court determined that probable cause existed for Plaintiff's arrest and Plaintiff is estopped from challenging the probable cause determination.  Plaintiff's state law claim for false arrest should be dismissed.

### 3.    Intentional Infliction of Emotional Distress

Under Minnesota law, to prevail on a claim of intentional infliction of emotional distress, a plaintiff "must prove that the complained of conduct: (1) was extreme and outrageous; (2) was intentional or reckless; and (3) in fact caused severe emotional distress."  Ferrell v. Cross,  557 N.W.2d 560, 566 (Minn. 1997) (citing Hubbard v. United Press Int'l., Inc., 330 N.W.2d 428, 438-39 (Minn.1983)).  "The tort of intentional infliction of emotional distress is sharply limited to cases involving particularity outrageous facts."  Adewale v. Whalen, 21 F. Supp.3d 1006, 1017 (D. Minn. 1998) (citing Odegard v. Finne, 500 N.W.2d 140, 144 (Minn. Ct. App. 1993)) (quotation marks omitted).  A plaintiff must, therefore, meet a high threshold before a court will submit such a claim to a jury. Corum v. Farm Credit Servs., 628 F. Supp. 707, 718 (D. Minn. 1986).  To be considered "extreme and outrageous," the conduct must be so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community.  Hubbard, 330 N.W.2d at 439.  In addition, severe emotional distress is emotional distress that no reasonable person could be expected to endure. Adewale, 21 F. Supp.3d at 1017 (citing Johnson v. Morris, 453 N.W.2d 31, 41 (Minn. 1990)).

The Court finds that Plaintiff has failed to sufficiently allege facts demonstrating that he suffered from severe emotional distress.   See Bohdan v. Alltool Mfg., Co., 411 N.W.2d 902, 908 (Minn. Ct. App. 1987) ("The verified complaint and the first affidavit submitted alleged that the harassment caused appellant severe mental, emotional, and physical distress. These mere allegations, standing alone, would not be sufficient to withstand summary judgment.").   Accordingly, defendants' motion to dismiss this claim should be granted.

### G.      Plaintiff's State Claims Against the City of Minneapolis

Defendants argue that Plaintiff's claims that the City is vicariously liable for the actions of the individual officers, and that the City is liable for negligent training and supervision should be dismissed. The Court agrees in part.  For the reasons set forth below, the City's motion for summary judgment on Plaintiff's claim of vicarious liability should be denied.  The City's motion for summary judgment on Plaintiff's claim of negligent training and supervision should be granted.

#### 1.      Vicarious Liability

Plaintiff argues that the City of Minneapolis is vicariously liable for the alleged misconduct of the individual Defendants under either the common law doctrine of respondeat superior, or Minnesota Statute section 466.02, which makes a municipality liable for its employee's torts.  Defendants counter that Plaintiff's claim against the City should be dismissed because the City is entitled to vicarious official immunity.

"Vicarious official immunity protects a governmental entity from liability based on the acts of an employee who is entitled to official immunity."  Dokman v. County of Hennepin, 637 N.W.2d  296, 297 (Minn. Ct. App. 2001).  When a public official is entitled to official immunity, a municipal employer

is often extended vicarious official immunity.  See Pletan v. Gaines, 494 N.W.2d 38, 43 (Minn.1992).

When the official is not entitled to official immunity, however, vicarious official immunity will not protect

the municipal employer.  See Wiederholt v. City of Minneapolis, 581 N.W.2d 312, 316 (Minn. 1998)

(holding that because a city inspector was not entitled to official immunity, the city was not entitled to

vicarious official immunity).  Because the Court has determined that Officers Walker, Parshall and

Garcia are not entitled to official immunity on Plaintiff's claims of battery, assault and intentional infliction

of emotional distress, the City of Minneapolis is not entitled to vicarious official immunity on those

claims.  The City's motion for summary judgment on Plaintiff's vicarious liability claim should be denied.


### 2.        Negligent Training and Supervision

Plaintiff alleges that the City of Minneapolis is liable for the negligent training and supervision of

the Defendant officers.  An employer's liability for retaining an employee with a propensity to cause

harm to others is based on the employer's personal fault in exposing others to unreasonable risk of

injury in violation of the employer's duty to exercise due care for their protection.  Porter v. Grennan

Bakeries, 16 N.W.2d 906, 910 (Minn. 1945).  "Negligent supervision is the failure of an employer to

exercise ordinary care in supervising the employment relationship to prevent foreseeable misconduct of

an employee from causing harm to others."  Olson v. First Church of Nazarene, 661 N.W.2d 254,

264-65 (Minn. Ct. App. 2003).

Plaintiff alleges that the City was negligent in continuing to employ and supervise the defendant

officers who had a demonstrated propensity to use excessive force on the job.  As discussed above,

however, Plaintiff has failed to establish that the City was, or should have been, aware of any

unconstitutional behavior on the part of the Defendant officers.  Only of the civilian CRA complaints

lodged against the Defendants proceeded to mediation.  Plaintiff does not explain how the previous

lawsuits initiated against the Defendants are relevant or how they establish that the Defendants had a

demonstrated propensity to use excessive force on the job.  Plaintiff has not established that the

Defendants' alleged misconduct in this case was foreseeable.  Accordingly, Plaintiff's claim for negligent

training and supervision should be dismissed.

## III.  RECOMMENDATION

Based on the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED**

that Defendants' Motion for Partial Summary Judgment [Docket No. 19] be **GRANTED in part** and

**DENIED in part,** as follows:

1.   Defendants' motion for summary judgment on Plaintiff's claim for "unreasonable seizure – arrest without probable cause," the motion should be **granted;**

2.   Defendants' motion for summary judgment on Plaintiff's claim of excessive force against Defendant Walker, the motion should be **denied;**

3.   Defendants' motion for summary judgment on Plaintiff's claim that the City is liable for the failure to train, supervise and discipline, the motion should be **granted;**

4.   Defendants' motion for summary judgment on Plaintiff's claim of battery, the motion should be **denied;**

5.   Defendants' motion for summary judgment on Plaintiff's claim of assault, the motion should be **denied**;

6.   Defendants' motion for summary judgment on Plaintiff's state claim of false arrest, the motion should be **granted;**

7.   Defendants' motion for summary judgment on Plaintiff's claim of intentional infliction of emotional distress, the motion should be **granted;**

8.      Defendants' motion for summary judgment on Plaintiff's claim on the City's vicarious liability, the motion should be **denied;**

9.      Defendants' motion for summary judgment on Plaintiff's state claim of negligent training and supervision, the motion should be **granted.**


DATED:   <u>January 4, 2005</u>


<u>s/ Arthur J. Boylan</u>
ARTHUR J. BOYLAN
United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **January 23, 2006**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **January 23, 2006**,  a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.